# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cv-336-RJC

| | |
|---|---|
| JESUS ALCOCER RANGEL,<br>Petitioner, | )<br>)<br>) |
| v. | )     **ORDER** |
| SIDNEY HARKLEROAD,<br>Respondent. | )<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on Respondent's motion for summary judgment. (Doc. No. 7).

## I.     BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on February 4, 2010, in the Superior Court of Mecklenburg County, Honorable W. Robert Bell, judge presiding, pled guilty pursuant to a plea bargain to the second-degree murder of Virginia Yvonne Sanchez on April 16, 2008. Petitioner stipulated to the existence of the aggravating factor that the murder was especially heinous, atrocious, or cruel, and he was sentenced to 180-225 months' imprisonment, in case 08 CRS 18354. (Doc. No. 8-2: Ex. 1; Doc. No. 8-3: Ex. 2). Petitioner had been indicted for first-degree murder. (Doc. No. 8-4: Ex. 3). Petitioner was represented by Susan J. Weigand and did not appeal.

On August 23, 2010, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals, seeking a belated direct appeal. (Doc. No. 8-5: Ex. 4). On September 8, 2010, the State filed its response. (Doc. No. 8-6: Ex. 5). On September 9, 2010, certiorari was dismissed, without prejudice to file a motion for appropriate relief (MAR) in the Superior Court of Mecklenburg County. (Doc. No. 8-7: Ex. 6). In the meantime, Petitioner dated a pro se MAR September 1, 2010, and filed it in the Superior Court of Mecklenburg County. (Doc. No. 8-8:

Ex. 7). On November 18, 2010, the Honorable Yvonne Mimms Evans summarily denied the MAR and denied Petitioner's request for a transcript. (Doc. No. 8-9: Ex. 8).

On February 1, 2011, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals. (Doc. No. 8-10: Ex. 9). On February 22, 2011, the State filed its response. (Doc. No. 8-11: Ex. 10). On February 24, 2011, the North Carolina Court of Appeals deemed the State's response timely filed and denied certiorari. (Doc. No. 8-12: Ex. 11). Petitioner dated a pro se petition for discretionary review (PDR) June 10, 2011, and filed it in the Supreme Court of North Carolina. This petition is still pending. Petitioner dated his pro se federal habeas application form July 7, 2011, and it was received by this Court on July 13, 2011.

In his federal habeas petition, Petitioner contends: (1) his right to due process was violated when the trial court sentenced him in the aggravated range; (2) his right to due process was violated and the trial court lacked jurisdiction due to a defective indictment; and (3) he received ineffective assistance of counsel.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

B.     Section 2254 Standard

In addition to the summary judgment standard set forth above, for those claims raised by Petitioner that were adjudicated on their merits by the state courts, this Court's review is limited by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000).  This Court may not grant relief unless the state court's merits review of a claim alleging constitutional error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law if the court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.  A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.  A state court decision also may be an unreasonable application of clearly established federal law if it applies Supreme Court precedent "in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable." Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (citation omitted).

The Supreme Court has cautioned that an unreasonable application of federal law differs

3

from an incorrect application of federal law. See Williams, 529 U.S. at 410. Thus, "[u]nder 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In deciding whether a state court's application of clearly established federal law is unreasonable within the meaning of § 2254(d), a federal habeas court should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Finally, the state court's factual findings are presumed to be correct, and this presumption may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

### A. First Ground For Relief: Petitioner's Contention that His Due Process Rights Were Violated When He Was Sentenced in the Aggravated Range

Petitioner first contends that his right to due process was violated when the trial court sentenced him in the aggravated range for the murder of Ms. Sanchez. To support this contention, Petitioner asserts that he was denied a jury determination of aggravating factors, that he is unable to speak English and was not fully informed of his plea bargain in Spanish, his plea transcript is not certified by a court-appointed translator, and that he was entitled to several mitigating factors.

Petitioner raised the substance of his current contention in his MAR, and the MAR court summarily denied the claim on its merits. The MAR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor is the MAR court's denial based on an unreasonable determination of facts, in light of the evidence

4

presented in the state court proceedings. First, contrary to Petitioner's suggestion that he did not have a translator, the record, as well as Petitioner's own statements, shows that he was provided a translator at his plea hearing. That is, in his August 23, 2010, certiorari petition, Petitioner admitted that he was provided with an interpreter. (Doc. No. 8-5: Ex. 4). Furthermore, in his handwritten affidavit attached to his MAR, Petitioner states, "I couldn't understand English as it was spoken or poorly translated to me." (Doc. No. 8-8: Ex. 7). Thus, by Petitioner's own statements, he admits that he <u>was</u> provided an interpreter at his plea hearing.

Furthermore, in response to Petitioner's contentions in his petition that he did not understand the charges and his statement that defense counsel Weigand should have provided a Spanish version of the plea agreement, counsel Weigand has submitted an affidavit, attesting that: counsel Weigand met with Petitioner for the first time at the Mecklenburg County Jail on April 30, 2008, at which time Public Defender Interpreter Richard Taylor accompanied counsel Weigand; that interpreter Taylor was present at each and every subsequent visit to the jail; that on September 22, 2008, Petitioner was given a copy of the discovery in Spanish, and interpreter Taylor translated it from English into Spanish; that on September 4, 2009, counsel and interpreter Taylor had a contact visit with Petitioner, in which counsel explained the plea offer to Petitioner and Petitioner was given a copy of the sentencing grid; that on December 1, 2009, counsel Weigand, interpreter Taylor, and Laura Mariso Gonzalez, Protection and Legal Affairs Officer of the Mexican Consulate, had a contact visit with Petitioner in which the plea offer, the sentencing hearing, and aggravating and mitigating factors were all discussed with Petitioner; that in a January 15, 2010, visit, counsel Weigand again discussed the plea offer with Petitioner and interpreter Taylor was present; that on February 4, 2010, Petitioner pled guilty to second-degree murder and stipulated to the aggravating factor of especially heinous, atrocious, or cruel;

and that at Petitioner's sentencing hearing a courtroom interpreter interpreted the entire proceeding for Petitioner. (Doc. No. 11-1: Affidavit of Weigand). Finally, counsel Weigand states that at no time did the government offer Petitioner a plea to Voluntary Manslaughter, nor was he ever offered a sentence in the mitigated range. (Id. ¶ 10).

Furthermore, at his plea hearing, Petitioner swore that he understood the charges against him. That is, in his transcript of plea, Petitioner swore under oath that he could hear and understand Judge Bell during the plea colloquy and that he could read and write at the Tenth Grade level. (Doc. No. 8-2: Ex. 1). Petitioner also swore that his lawyer explained the nature of the charge, that Petitioner understood every element of the charge, and that he was in fact guilty of second-degree murder. (Id.). Petitioner swore that he understood his guilty plea placed limitations on his right to appeal. (Id.). Petitioner also swore that the only terms and conditions of his plea bargain were as follows: "The defendant stipulates to the existence of the aggravating factor of especially heinous, atrocious or cruel and after a sentencing hearing the Court will determine the defendant's sentence." (Id.).

Petitioner swore this was his complete plea agreement and no one made any other promises or threatened him in any way to cause him to plead against his wishes. (Id.). Petitioner's initials appear just below this agreement. (Id.). Petitioner also swore that he understood that, by admitting to the aggravating factor, he waived all notice requirements regarding the aggravating factor, and admitted its existence beyond a reasonable doubt. (Id.). Judge Bell then conducted a sentencing proceeding, finding the stipulated aggravating factor, two mitigating factors, and sentenced Petitioner in the aggravated range to 180-225 months' imprisonment. (Doc. No. 8-3: Ex. 2).

Furthermore, defense counsel certified that she explained to Petitioner the nature and

6

elements of the charge to which he pled guilty, and the aggravating and mitigating factors and prior record points for sentencing. (Doc. No. 8-2: Ex. 1). The prosecutor also certified that the terms and conditions of the plea were correct. (Id.).

Under clearly established Supreme Court law, a defendant's knowing, voluntary, and counseled plea is constitutionally sufficient to prove every essential element of each charge, and leaves nothing remaining but sentencing. See Boykin v. Alabama, 395 U.S. 238 (1969) (requirements for valid guilty plea). Furthermore, the Supreme Court held in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) that representations of the defendant, his lawyer, and the prosecutor at a guilty plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent, collateral proceedings.

Here, Petitioner's own self-serving statements are insufficient to breach the high barrier of Blackledge. Furthermore, the trial court's findings in accepting the plea are supported by Petitioner's responses during the plea colloquy and are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). Petitioner has the burden of rebutting this presumption by "clear and convincing evidence," which he has not done in this case. See 28 U.S.C. § 2254(e)(1). In sum, the MAR court's summary denial of Petitioner's first ground for relief was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable application of the facts, in light of the evidence presented to the state court.

**B.     Second Ground For Relief: Petitioner's Contention that His Due Process Rights Were Violated Because the Trial Court Lacked Jurisdiction Due to a Defective Indictment**

Petitioner next contends that his right to due process was violated because the trial court lacked jurisdiction due to a defective indictment. To support this contention, Petitioner asserts

that the indictment failed to adequately list each material element of the offense. (See Doc. No. 8-4: Ex. 3). The short-form murder indictment used in this case states, in pertinent part, "[Petitioner] did unlawfully, willfully, and feloniously and of malice aforethought kill and murder Virginia Yvonne Sanchez." (Id.).

Petitioner raised the substance of this claim in his MAR, and the MAR court summarily denied the claim. (Doc. Nos. 8-8, 8-9: Exs. 7; 8). The MAR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. That is, there is no authority under clearly established Supreme Court law holding that a short-form murder indictment such as the one used against Petitioner violates the U.S. Constitution.[1] Therefore, the MAR court's summary denial of this claim was not contrary to or an unreasonable application of clearly established Supreme Court law. Accord Schlaepfer v. Harkleroad, 244 F. Supp. 2d 589, 593 (W.D.N.C. 2003) (Thornburg, J.).

### C. Third Ground For Relief: Ineffective Assistance of Counsel

Petitioner next contends that his trial counsel was ineffective. Petitioner sets forth numerous conclusory assertions regarding the alleged ineffectiveness of his counsel. Petitioner contends that counsel: should have investigated the case more; should have provided a Spanish transcript of the plea form; should have filed a motion for exculpatory evidence; should have moved to dismiss due to a defective indictment; should have filed a motion to withdraw due to a conflict of interest; should have filed a motion for expert witness; should have objected to

---

[1] Furthermore, the Fourth Circuit has upheld North Carolina's short-form murder indictment as constitutionally adequate to charge first-degree murder and all lesser-included offenses. See Stroud v. Polk, 466 F.3d 291 (4th Cir. 2006) (short-form murder indictment sufficient to charge first-degree murder even though all specific essential elements not listed).

destruction of evidence; should not have coerced an unknowing and involuntary plea; should have filed a speedy trial motion; and failed to file an appeal.

First, with regard to his contention that his counsel failed to advise him of his appellate rights, this claim is procedurally defaulted. That is, in his initial August 23, 2010, certiorari petition, Petitioner sought a belated, direct appeal, contending that counsel failed to advise him of his appellate rights. (Doc. No. 8-5: Ex. 4). The North Carolina Court of Appeals dismissed this certiorari petition, without prejudice to file an MAR in the trial court. (Doc. No. 8-7: Ex. 6). In Petitioner's MAR, however, he did not raise the claim that his lawyer failed to advise him of his appellate rights. (Doc. No. 8-8: Ex. 7). Instead, he only made a one-line statement that, "Defendant has a statutory right to appeal his sentence as a matter of right." (See id. at 3). Thus, Petitioner's assertion that counsel failed to advise him of his appellate rights is procedurally barred under North Carolina's mandatory, post-conviction procedural bar statute.[2] See N.C. GEN. STAT. § 15A-1419(a)(1) and (b) (2009) (claim shall be denied when defendant was in adequate position to have raised it in prior MAR but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e., actual innocence); see also Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010) (stating that Section 15A-1419(a)(1) and (a)(3) are independent and adequate state procedural bars); Rose v. Lee, 252 F.3d 676 (4th Cir. 2001) (stating that North Carolina's post-conviction procedural bar statute of section 15A-1419 is now mandatory).

---

[2] In any event, as Respondent notes, Petitioner swore under oath in open court that he understood that, following a guilty plea, there are limitations to the right to appeal. (Doc. No. 8-2: Ex. 1). Although Petitioner could have appealed as to certain, limited issues, as a practical matter Petitioner had no potentially successful issues to appeal once he pled guilty, and once he admitted the aggravating factor that the murder was especially heinous, atrocious, or cruel. Thus, even if this claim were not procedurally defaulted, and even if Petitioner could show that counsel was ineffective, Petitioner cannot show that he was prejudiced by counsel's alleged failure to advise him of his appellate rights.

9

Next, with respect to his remaining grounds for ineffective assistance of counsel, Petitioner raised these in his MAR, and the MAR court summarily denied each of these remaining grounds. The MAR court's denial of each of these remaining grounds was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts, in light of the evidence presented in the state court proceedings.

The Court first sets forth the clearly established law as determined by the Supreme Court regarding ineffective assistance of counsel. In Strickland v. Washington, the Supreme Court set forth the test for determining whether a defendant received ineffective assistance of counsel as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). Thus, under Strickland v. Washington, a defendant must show both that counsel's performance fell below objective standards of reasonableness, and that, but for this conduct, there was a reasonable probability that the result of the trial would have been different. Id.

In determining reasonableness, the reviewing court must consider whether the performance was reasonable in light of the totality of the circumstances when the performance was rendered. Strickland, 466 U.S. at 690. Furthermore, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted). To establish ineffective assistance of counsel in the guilty plea context, Petitioner must show a professional dereliction and a reasonable probability that an objectively reasonable person in his shoes would not have pled guilty and would have insisted on going to trial, absent the alleged dereliction. See Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

Finally, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice allegedly suffered as a result of the alleged deficiencies of counsel, and if it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, the reviewing court should analyze the claim under the prejudice prong only. Id. at 697.

The following claims by Petitioner were not procedurally defaulted: that counsel (1) should have investigated the case more; (2) should have provided a Spanish transcript of plea form; (3) should have filed a motion for exculpatory evidence; (4) should have moved to dismiss due to a defective indictment; (5) should have filed a motion to withdraw due to a conflict of interest; (6) should have filed a motion for expert witness; (7) should have objected to destruction of evidence; (8) should not have coerced an unknowing and involuntary plea; and (9) should have filed a speedy trial motion. The MAR court's summary denial of these claims was neither contrary to nor an unreasonable application of clearly established Supreme Court law.[3]

First, with respect to Petitioner's contention regarding a defective indictment, the Court

---

[3] The summary denial by the MAR court constitutes a denial on the merits and is therefore entitled to deferential review under section 2254(d) and (e). Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998).

11

has already determined that the indictment in this case was not defective and did not violate Petitioner's due process rights. Therefore, defense counsel's failure to challenge the indictment was not ineffective assistance of counsel.

Next, with regard to Petitioner's contention that defense counsel should have filed a motion to withdraw due to a conflict of interest, the alleged "conflict of interest" was counsel's refusal to file all motions that Petitioner asked her to file. Petitioner does not identify what motions counsel refused to file and how her failure to file the motions constituted ineffective assistance. Furthermore, counsel was not required to file every motion that Petitioner requested, and her failure to withdraw as Petitioner's counsel does not constitute ineffective assistance. Thus, this part of Petitioner's ineffective assistance of counsel claim is without merit.

Next, Petitioner contends that counsel was ineffective because she failed to file a motion for an expert witness to conduct a psychological evaluation of Petitioner to show that when he killed Ms. Sanchez he was suffering from post-traumatic depression. This contention is wholly conclusory, as Petitioner does not indicate that defense counsel had any reason to believe that Petitioner's mental state should be evaluated before he pled guilty. In sum, this portion of Petitioner's ineffective assistance claim is without merit.

Next, with regard to Petitioner's contention that defense counsel was ineffective because she should have objected to an order by the trial judge to destroy evidence, this contention is without merit, as it is wholly conclusory, as Petitioner does not identify what evidence Judge Bell allegedly destroyed. Also conclusory is Petitioner's contention that defense counsel was ineffective for failing to investigate the case more, and this portion of Petitioner's ineffective assistance claim is also without merit.

Next, with regard to Petitioner's contention that defense counsel was ineffective for

"coercing" Petitioner to enter into a guilty plea that was involuntary because a Spanish version of the plea form was not used, this contention is without merit, as Petitioner's own statements at the plea hearing that his guilty plea was knowing and voluntary carry a strong presumption of veracity. Furthermore, this Court has already found that Spanish translators were used at the plea hearing, as well as throughout the time period leading up to his guilty plea. This portion of Petitioner's ineffective assistance of counsel claim is simply without merit.

Next, as to Petitioner's contention that defense counsel was ineffective for failing to file a motion for exculpatory evidence, Petitioner contends that "the offense was the proximate result of the threats of life receive from the alleged victim." (Doc. No. 1 at 24). Petitioner appears to be contending that he was acting in self-defense when he killed Ms. Sanchez. Because Petitioner pled guilty to the second-degree murder of Ms. Sanchez, he gave up his right to have his defense counsel argue that he was acting in self-defense. This portion of Petitioner's ineffective assistance of counsel claim is without merit.

Finally, Petitioner contends that defense counsel was ineffective for failing to file a motion to dismiss based on his right to a speedy trial after 657 days awaiting trial. This contention is without merit. A guilty plea constitutes a waiver of all nonjurisdictional defects. United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). In other words, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offenses with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Here, Petitioner's guilty plea bars his ability to challenge

his counsel's decision not to file various pretrial motions, including a speedy trial motion.[4] Accord Serrano v. Stancil, No. 5:10cv47, 2011 WL 1239848, at *5 (W.D.N.C. Mar. 30, 2011) (Conrad, C.J.).

In sum, Respondent is entitled to summary judgment as to Petitioner's claim of ineffective assistance of counsel, as the MAR court's summary denial of this claim was neither contrary to nor an unreasonable application of clearly established law as determined by the Supreme Court.

### IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**;
2. Petitioner's § 2254 petition is **DISMISSED** with prejudice; and
3. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the

---

[4] This principle also applies to Petitioner's contentions regarding other motions that he contends counsel should have filed before he entered his guilty plea.

dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 14, 2012

Robert J. Conrad, Jr.
Chief United States District Judge